JOHN BOYER SAER AND       *       NO. 2022-CA-0176
KATHLEEN WALSH SAER

                             *

VERSUS                       COURT OF APPEAL

                             *

THE CITY OF NEW             FOURTH CIRCUIT
ORLEANS; TAMMIE
JACKSON, IN HER OFFICIAL       *
CAPACITY AS DIRECTOR OF    * * * * * * *    STATE OF LOUISIANA
THE DEPARTMENT OF
SAFETY AND PERMITS AND
THE NEW ORLEANS BOARD
OF ZONING ADJUSTMENTS

**CONSOLIDATED WITH:**                **CONSOLIDATED WITH:**

KAREN EDMUNDS               NO. 2022-CA-0177

VERSUS

THE CITY OF NEW ORLEANS;
TAMMIE JACKSON, IN HER
OFFICIAL CAPACITY AS
DIRECTOR OF SAFETY AND
PERMITS AND THE NEW
ORLEANS BOARD OF ZONING
ADJUSTMENTS

**CONSOLIDATED WITH:**                **CONSOLIDATED WITH:**

AUDUBON AREA ZONING         NO. 2022-CA-0178
ASSOCIATION

VERSUS

THE CITY OF NEW ORLEANS;
TAMMIE JACKSON, IN HER
OFFICIAL CAPACITY AS
DIRECTOR OF SAFETY AND
PERMITS AND THE NEW
ORLEANS BOARD OF ZONING
ADJUSTMENTS

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2021-03422, DIVISION "C"
Honorable Sidney H. Cates, Judge
* * * * * *

**Judge Tiffany Gautier Chase**
\* \* \* \* \* \*

(Court composed of Chief Judge Terri F. Love, Judge Sandra Cabrina Jenkins, Judge Tiffany Gautier Chase)

**JENKINS, J., DISSENTS WITH REASONS**

E. Howell Crosby
G. Wogan Bernard
Amy L. McIntire
CHAFFE MCCALL, L.L.P.
2300 Energy Centre
1100 Poydras Street
New Orleans, LA 70163

Donna M. Young
PUGH ACCARDO HAAS, RADECKER & CAREY, LLC
1100 Poydras Street, Suite 3200
New Orleans, LA 70163--1132

Glenn B. Adams
PORTEOUS HAINKEL & JOHNSON, LLP
704 Carondelet Street
New Orleans, LA 70130

      COUNSEL FOR PLAINTIFFS/APPELLANTS

Donesia D. Turner
CITY ATTORNEY
Kevin C. Hill
SR. CHIEF DEPUTY CITY ATTORNEY
Shawn Lindsay
DEPUTY CITY ATTORNEY
Daniel T. Smith
ASSISTANT CITY ATTORNEY
William R. H. Goforth
ASSISTANT CITY ATTORNEY
1300 Perdidio Street, Room 5E03
New Orleans, LA 70112

      COUNSEL FOR DEFENDANTS/APPELLEES

**AFFIRMED**
**SEPTEMBER 16, 2022**

*TGC*

*TFL*

In this consolidated appeal, John Saer, Kathleen Saer, Karen Edmunds and Audubon Area Zoning Association (hereinafter collectively "Plaintiffs") seek review of the trial court's January 10, 2022 judgment denying their petition for judicial review.[1] After consideration of the record before this Court, and the applicable law, we affirm the judgment of the trial court.

<u>**Facts and Procedural History**</u>

Jennifer Page and her husband, Joseph Koveleskie (hereinafter "the Koveleskies") are the owners of residential property located at 1321 Calhoun Street (hereinafter "the property") in New Orleans, Louisiana, which they purchased in February 2016. The property is located in a residential district that is zoned HU-RD2 Historic Urban Two Family Residential District, under the City of New Orleans Comprehensive Zoning Ordinance (hereinafter "CZO). The property consists of a principal building and a second rear structure that was originally built as a garage and later converted to an apartment.

---

[1] Plaintiffs John and Kathleen Saer and Karen Edmunds are neighbors to the property at issue. Plaintiff Audubon Area Zoning Association is the neighborhood association for the subject property.

1

On October 18, 2019, the Koveleskies obtained an emergency permit for the second structure from the City of New Orleans, Department of Safety and Permits (hereinafter "the Department") which allowed emergency repairs to the roof, interior termite repair and painting of the second structure. On November 19, 2019, the Koveleskies filed an application entitled "Determination of Non-conforming Status" with the Department in order to change the zoning status of the property from a single dwelling to a double dwelling by renovating the second structure into an apartment and including it as a separate structure on the property. The Koveleskies attached the following to their application: (1) notarized affidavit from the Koveleskies; (2) notarized affidavits of neighbors or other individuals with direct knowledge of occupancy or operation; (3) Cox cable bill addressed to occupant of the second structure, Santiago Martin; (4) October 21, 2011 property appraisal and accompanying invoice; (5) November 17, 2011 floor plan for the second structure; and (6) the November 25, 2011 second structure inspection report with accompanying photographs.

On January 2, 2020, the Department made a determination that the property had not attained/retained legal non-conforming use status under the provisions of the CZO because there was no evidence of, "culinary facilities," i.e., a kitchen. The Department noted the following:

> Based on the documentation provided by the applicant, it appears that this structure has historically been used as a living space and rented out to the public. However, pictures show that there are not full culinary facilities, since there is [no] oven in the kitchen. Since there is no evidence that the rear structure is a full dwelling unit with culinary facilities, the Zoning Administrator believes this property HAS NOT RETAINED/ATTAINED its legal, non-conforming status as a second principal structure.

2

On September 4, 2020, the Koveleskies requested the Department re-evaluate the status of the second structure and determination that it had not attained/retained legal non-conforming status as a second principal structure. The Koveleskies attached additional documentation to their re-evaluation request including, but not limited to, the affidavit of Jennifer Page, the property owner, 2014 rent deposits from the occupant of the second structure, and utility bills.

On November 10, 2020, the Department determined that the property had attained legal, non-conforming status under the CZO. The Department re-evaluated the newly produced documents and determined that historically there was a kitchen on the Property. The Department stated the following:

> In light of the documentation that has been submitted, the Chief Zoning Official believes that the second structure located on this property has operated as a second dwelling unit and separate principal structure for at least ten years. As such, it is recommended that this property [] HAS ATTAINED its status as a legal non-conforming second dwelling unit and principal structure.

Plaintiffs subsequently filed separate appeals of the Department's November 10, 2020 determination to the New Orleans Board of Zoning Adjustments (hereinafter "the Board"). Plaintiffs named as defendants the City of New Orleans, Tammie Jackson, in her official capacity as director of the Department, and the Board (hereinafter collectively "the City of New Orleans). The Plaintiffs opposed the property being designated with a legal non-conforming use status and various neighbors submitted letters in support of the opposition. The appeals were consolidated and a public hearing was held. On March 25, 2021, the Board denied the appeals and found the following:

> [T]he Board carefully considered the facts and arguments for and against the application at the public hearing, and after considering the [CZO], No. 4264 M.C.S., as amended, the Board is of the opinion that the weight of the evidence does not indicate an error in application of

3

the law or a conflict in the law, in accordance with Article 4, Section 7.8.A of the [CZO]; therefore, a motion was made…to DENY the appeal and UPHOLD the decision made by the Director of the Department of Safety and Permits.

Thereafter, Plaintiffs filed separate petitions for writ of certiorari and judicial review of the Board's decision in Orleans Parish Civil District Court. The matters were consolidated and heard by the trial court. By judgment dated January 10, 2022, the trial court affirmed the decision of the Board. At the hearing, the trial court stated that the Plaintiffs did not establish that the Board's decision was arbitrary, capricious or an abuse of discretion. This appeal followed.

## Discussion

On appeal, the Plaintiffs assert two assignments of error: (1) the Board erred in determining that the Department may re-evaluate a final determination after the expiration of the 45-day appeal period and (2) the Board's determination that the second rear structure attained legal non-conforming status as a second dwelling was in error.

### Standard of Review

In *Cordes*, this Court set forth the applicable standard of review regarding the Board's decisions as follows:

> Questions of law are reviewed by this Court under the *de novo* standard of review. The purpose of certiorari review by the district court of decisions of boards and quasi-judicial tribunals is to "determine whether jurisdiction has been exceeded, or to decide if the evidence establishes a legal and substantial basis for the Board's decision." This Court has further held that decisions of the Board of Zoning Adjustments are afforded a presumption of validity. However, the presumption is rebuttable. Finally, a reviewing court should not merely substitute its own judgment for that of the BZA unless there is a showing that the Board acted arbitrarily and capriciously, the Board abused its discretion, or the Board rendered a decision that was manifestly erroneous in light of substantial evidence in the record.

4

*Cordes v. Bd. of Zoning Adjustments*, 2009-0976, pp. 6-7 (La.App. 4 Cir. 1/20/10), 31 So.3d 504, 508-09 (internal citations omitted).

**Law and Analysis**

La. R.S. § 33:4727(A)(1) provides that "a board of adjustment 'may determine and vary' zoning regulation applications 'in harmony with their general purpose and intent and in accordance with the general or specific rules contained therein.'" *Cordes*, 2009-0976, p. 7, 31 So.3d at 509. Upon petition for review, the district court may review decisions by the Board. La. R.S. § 33:4727(E). "The district courts have original jurisdiction to review a decision of an administrative body, such as the [Board]." *Dupuis v. City of New Orleans through Zoning Bd. of Zoning Adjustments*, 2017-0052, p. 2 (La.App. 4 Cir. 8/2/17), 224 So.3d 1046, 1048. The district court is allowed to take additional testimony or evidence as part of the consideration of an appeal from the Board. La. R.S. § 33:4727(E)(4). "Such additional evidence and testimony may be entertained whenever the district court is of the opinion it is warranted." *Cordes*, 2009-0976, p. 7, 31 So.3d at 509 (citing *Lakeshore Property Owners Association v. City of New Orleans Board of Zoning Adjustments*, 1985-3542, 481 So.2d 162, 165 (La.App. 4 Cir. 12/11/85)).

"The purpose of certiorari review by the district court of decisions of boards and quasi-judicial tribunals is…'to decide if the evidence establishes a legal and substantial basis for the Board's decision.'" *Esplanade Ridge Civic Ass'n v. City of New Orleans*, 2013-1062, p. 3 (La.App. 4 Cir. 2/12/14), 136 So.3d 166, 169 (quoting *Elysian Fields, Inc. v. St. Martin*, 600 So.2d 69, 72 (La.App. 4th Cir. 1992). As such, with respect to reviewing a district court judgment regarding decisions of the Board, the Courts of Appeal have appellate jurisdiction. *Dupuis*, 2017-0052, p. 3, 224 So.3d at 1049. With these legal precepts in mind, we first

5

analyze whether the Board erred in determining that the Department properly re-evaluated the January 2, 2020 decision, regarding the property's non-conforming use status, after the expiration of the 45-day period to appeal the determination.

## Procedural Issue

Plaintiffs assert that the Koveleskies failed to appeal the January 2, 2020 determination, of not attaining non-conforming use status, within the applicable time period. According to Plaintiffs, the January 2, 2020 decision was final and the Koveleskies were not legally entitled to request a re-evaluation of the determination. Conversely, the City of New Orleans maintains that the Department is not precluded from re-evaluating a non-conforming use status determination after expiration of the appeal deadline because the Koveleskies submitted additional evidence.

La. R.S. 33:4727(C)(2)(a) provides:

> Appeals to the board of adjustment may be taken by any person aggrieved or by any officer, department, board, or bureau of the municipality affected by any decision of the administrative officer. Appeals shall be taken within a reasonable time, as provided by the rules of the board, by filing with the officer from whom the appeal is taken, and with the board of adjustment a notice of appeal specifying the grounds thereof. The officer from whom the appeal is taken shall forthwith transmit to the board all the papers constituting the record upon which the action appealed from was taken, after all transcript costs and all other costs of appeal are paid by the person or entity taking the appeal, the appellant.

"The [Board's] Rules of Procedure and Policy art. II, § 6 provides that every appeal 'shall be taken within forty-five (45) days' from the date of a decision or determination by the Director of [the Department]." *Palm Air Civic Ass'n, Inc. v. Syncor Int'l Corp.*, 1995-0934, p. 3 (La.App. 4 Cir. 1/19/96), 667 So.2d 1185, 1187.

Neither party disputes that the Department may re-evaluate a zoning status determination on newly submitted evidence. However, Plaintiffs' contend that this re-evaluation must occur prior to the expiration of the 45-day appeal deadline. Plaintiffs rely on CZO Section 4.8.C which provides that "[n]o appeal of the [Department's] decisions is allowed after the expiration of forty-five (45) days from the date the decision is rendered by the Director of the Department of Safety and Permits." However, this ordinance addresses the appeal of the Department's decision to the Board, not the re-evaluation of a previous decision by the Department itself. "Any person aggrieved by a decision of the Director of Safety & Permits may take an appeal to the Board of Zoning Adjustments." *Lake Forest, Inc., v. Bd. of Zoning Adjustments of City of New Orleans*, 487 So.2d 133, 134 (La.App. 4 Cir. 4/11/1986) (citation omitted). The Board may reverse, affirm or modify decisions through its appellate process. *See Id*. at 135 (citation omitted). If this matter involved re-evaluation of a decision by the Department, the Koveleskies would have been required to exhaust all administrative remedies and timely file their grievance with the Board through the filing of an appeal. Thus, the 45-day appeal timeframe is triggered if the party is filing an appeal and a new application with the Department would be required contingent upon the Board's decision regarding that appeal. Conversely, the 45- day timeframe is inapplicable if a party seeks a re-evaluation of a decision by the Director of the Department rather than challenging a decision by the Department to the Board. Had the Koveleskies appealed the Department's decision they would have been bound by the 45-day appeal period. This is not the case. Accordingly, we find the 45-day appeal timeframe inapplicable to the director's evaluation. We next analyze whether the Koveleskies presented any new evidence with their 2020 re-evaluation request.

**Evidentiary Review**

Plaintiffs assert that the Koveleskies did not submit any new evidence with their re-evaluation request. The November 10, 2020 determination letter provides that the initial application was denied because the Koveleskies "had not proven that the second structure was a legally non-conforming principal structure, namely an additional dwelling unit." Noting that the Koveleskies had provided the Department with new additional evidence, the Department re-evaluated the application. The determination letter states that the following documentation was submitted in support of the Koveleskies' request to re-evaluate the previous determination: "(1) an affidavit from the property owner [Jennifer Page] stating that the second structure had been used as a dwelling unit since the 1960s, that she personally lived in the unit in the 1970s, and that the unit has had a gas stove since its conversion to residential use; (2) a log of received rent payments; (3) copies of mail and utility bills; and (4) insurance documentation showing repairs to the second structure, including repairs to the gas line in the kitchen." Although Plaintiffs assert that the newly submitted evidence was also submitted with the Koveleskies' previous application, our review of the record reveals that the 2019 affidavit of Jennifer Page differs from the affidavit submitted with the 2020 re-evaluation request. Specifically, the 2020 affidavit provides that "[a]t all material times, the dwelling unit had a gas stove and toaster oven on the countertop." This information was not provided in the 2019 affidavit. Nothing precludes the Department from re-evaluating a zoning status on newly submitted evidence. The Department determined that the newly submitted 2020 affidavit from Jennifer Page outlining the existence of a gas stove was sufficient evidence to demonstrate legally non-conforming use status of the second dwelling and secondary principal

8

structure. Specifically, that a kitchen had existed in the second structure at all material times.

In affirming the Department's decision, the Board found that the weight of the evidence did not indicate an error by the Department. The trial court likewise made the same determination. "Our jurisprudence indicates that 'the decisions of the [Board]…are subject to judicial review only as to whether they are arbitrary, capricious or an abuse of discretion.'" *Dupuis*, 2017-0052, p. 4, 224 So.3d at 1049 (quoting *Antunez v. City of New Orleans Bd. of Zoning Adjustments*, 2015-0406, p. 2 (La.App. 4 Cir. 2/24/16), 187 So.3d 525, 526. "Thus, an appellate court 'should not second guess the [Board] or substitute its own judgment for that of the [Board].'" *Id*.

The aggrieved party bears the burden on appeal of demonstrating that, based on substantial evidence in the record, the Board's decision was arbitrary, capricious or manifestly erroneous. *Dupuis*, 2017-0052, p. 5, 224 So.3d at 1050 (citation omitted). Based on the record before this Court, the Plaintiffs have not established that the Board erred in determining that the Department properly re-evaluated its previous decision based on new documentation. As found by the trial court, Plaintiffs have failed to establish that the Board acted arbitrary, capricious or abused its discretion. Finally, we consider whether the Board erred in finding that the second structure on the property met legal non-conforming use status.

**Zoning Issue**

In its second assignment of error, Plaintiffs contend that the Board erred in determining that the second rear structure met legal non-conforming use status as a second dwelling. Plaintiffs assert that the Board, by adopting the reasoning of the Department, conflated "non-conforming use" and "non-conforming structure" in

9

its determination.[2] However, the record reflects that the Department determined that the property had retained non-conforming use status based on an exception under the CZO. The Department relied on the exception to the rule, that there may not be two principal structures on the property zoned under HU-RD2, outlined in CZO 21.4.A.4, which provides:

> In the HU-RD1 and HU-RD2 Districts, more than one (1) principal building may be permitted on a lot of record provided that historical authentication can verify the historical existence of more than one (1) principal building on such lot, and provided further that such information can be properly documented to the Department of Safety and Permits and, when applicable, the Historic Districts Landmarks Commission. All such buildings and appurtenances require the approval of the Department of Safety and Permits and, when applicable, the Historic Districts Landmarks Commission.

The Department found that the existence of a permanent cooking facility, in the second structure, for several years qualified the structure as having historical existence as a separate principal structure. Due to the length of time the second structure contained a cooking facility, the Department determined that the "ongoing use as a two-family dwelling with two principal structures is permitted." In the appeal summary report, the Department noted that it verified the historical existence of a second principal building based on the newly submitted evidence from the Koveleskies. Specifically, the Department relied on the affidavit from Jennifer Page stating that the second structure has contained a gas stove since its conversion to residential use in the 1960's. As noted by the Plaintiffs, the CZO does not define "historical existence." However, we find an exact definition of

_____

[2] The CZO defines non-conforming use as "the use of land or a use within a structure that, as of the effective date of this Ordinance, is used for a purpose not allowed in the zoning district in which it is located." CZO, Article 25, Section 25.3.A. "If a structure existing on the effective date of this Ordinance or any subsequent amendment to this Ordinance was a conforming structure and was legally constructed before the effective date of this Ordinance…,and such structure does not meet all standards set forth in this Ordinance, that structure is deemed a legal nonconforming structure… . CZO, Article 1, Section 1.5.D.

10

"historical existence" is not warranted as CZO 21.4.A.4 provides that "historical existence" is contingent upon "historical authentication." Thus, for a property to qualify for non-conforming use status under the historical existence exception, the Department need only authenticate the historical use of the second structure on the property. In light of the submitted documentation, the Department found "that the second structure" on the property had "operated as a second dwelling unit and separate principal structure for at least ten years." The Board found no error in the Department's determination. As the burden of proof lies with the Plaintiffs, we find they have failed to demonstrate that the Board's decision was arbitrary, capricious or an abuse of discretion. Accordingly, this Court will not disturb the decision of the Board.

## Decree

For the foregoing reasons, we affirm the judgment of the trial court denying Plaintiffs' petition for judicial review and dismissing their claims with prejudice.

**AFFIRMED**